FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 8 - 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

PAMELA RODRIGUEZ; TIFFANY BELL;
YOLANDA CAPERS; TONI REID; KESHA
SMITH; AKELA GRIFFITH; TIFFANY
MORRIS; FELICITA GOMEZ; SANDRA
SPRINGER; CYNTHIA HILL; JENNY
MARCELINO, on behalf of themselves and
all others similarly situated,

                     Plaintiffs,

- against -

CITY OF NEW YORK (Michael R.
Bloomberg, as Mayor); NEW YORK CITY
POLICE DEPARTMENT (Raymond Kelly, as
Police Commissioner),

                     Defendants.

------------------------------------------------------X

**MEMORANDUM**
**DECISION AND ORDER**

06 Civ. 3049 (BMC)

**COGAN**, District Judge.

Currently before the Court is the parties' proposed Stipulation of Settlement of Attorneys' Fees and Costs ("Stipulation") in which the parties agree to award attorneys' fees to plaintiffs' counsel, Lewis Brisbois Bisgaard & Smith, LLP ("Lewis Brisbois") and District Counsel 37, AFSCME, AFL-CIO ("DC 37"). This Court granted an award of attorneys' fees to Lewis Brisbois in a separate Order dated May 14, 2010, and now awards plaintiffs' fees for the work performed by in-house counsel for DC 37, but limits the amount recovered to the actual costs DC 37 incurred in providing legal services to plaintiffs.

## BACKGROUND

### I. The Underlying Litigation

On June 20, 2006, plaintiffs initiated this class action against defendants alleging violations of the Family Medical Leave Act ("FMLA"). On January 24, 2008, this Court certified a class consisting of "current or former civilian employees of the NYPD, who worked or are working in the civil service titles of PCT or SPCT as of June 20, 2003, who are or were, within three years preceding the filing of the original complaint, eligible and certified for FMLA leave." The parties thereafter resolved this dispute and entered into a Stipulation of Settlement and Discontinuance ("Settlement"), which was approved by this Court on December 10, 2009. The Settlement included a provision in which the parties agreed that plaintiffs were entitled to reasonable attorneys' fees as prevailing parties.[1]

### II. The Parties' Proposed Stipulation

On April 8, 2010, the parties submitted a Stipulation for the Court's approval. The Stipulation directed defendant, the City of New York, to pay counsel for plaintiffs, Lewis Brisbois, $370,460.64, and DC 37, $594,539.36, for a total sum of $965,000.00. The Stipulation had two signature blocks for the plaintiffs, one each for Lewis Brisbois, signed by one of its partners, and another for DC 37, signed by one of its in-house attorneys. Lewis Brisbois and DC 37 were each listed as "Attorneys for Plaintiffs."

After reviewing the Stipulation, this Court issued an Order on April 12, 2010, directing plaintiffs' counsel to clarify: (1) how DC 37, a union and not a law firm, could be awarded

---

[1] The FMLA authorizes an award of "reasonable attorney's fee[s], reasonable expert witness fees, and other costs of the action to be paid by the defendant" where a violation of the statute has been established. 29 U.S.C. § 2617(a)(3) (2008). Although the Settlement provided that plaintiffs' counsel would submit an application for fees to the Court, the parties reached an agreement on their own.

2

attorneys' fees under the Stipulation, and (2) the basis for DC 37 being awarded more in attorneys' fees than plaintiffs' outside counsel, Lewis Brisbois. Plaintiffs were further directed to submit to the Court copies of all retainer agreements and other written agreements relating to attorneys' fees in this action.

The Court held a hearing on the proposed Stipulation on May 11, 2010 and heard argument from plaintiffs' counsel. Thereafter, the Court granted Lewis Brisbois attorneys' fees in the amount sought under the Stipulation, but reserved decision as to DC 37.

### III. The Fee Arrangement

DC 37 is a labor union that is comprised of 55 local unions, and is the recognized collective bargaining representative of plaintiffs. The General Counsel's Office of DC 37 (the "GCO") consists of eleven attorneys and serves as in-house counsel for DC 37. DC 37 provides legal services to the union, its affiliated local unions, and their 125,000 members, by either utilizing the GCO, or by assigning matters to outside counsel.[2]

For this class action, the GCO and Lewis Brisbois entered into a joint retainer agreement with each of the named plaintiffs.[3] The retainer agreement provided that "Eddie M. Demmings, General Counsel of District 37, Steven Sykes, Of Counsel, DC 37 Legal Department, and co-counsel Maureen M. Stampp and Ivan D. Smith of Lewis Brisbois Bisgaard & Smith LLP"

---

[2] DC 37 entered into a Letter of Engagement with Lewis Brisbois to provide legal services on its behalf.

[3] Originally GCO and Vladeck, Waldman, Elias, & Engelhard, P.C. represented plaintiffs in this matter. Pursuant to a Stipulation of Substitution of Counsel executed on September 27, 2007, Lewis Brisbois was substituted as counsel for plaintiffs.

would represent plaintiffs in this action. Steven Sykes ("Sykes") was the primary in-house attorney working on this matter.[4]

Paragraph ¶3 of the retainer agreement, entitled "Compensation and Billing Practices," provided that plaintiffs would not be obligated to pay any attorneys' fees and in exchange they agreed not to waive their right to seek payment of such fees if they prevailed. Throughout the litigation, DC 37 would pay any fees and costs incurred by Lewis Brisbois, and at its conclusion, both counsel would make a separate fee application to the Court, "seeking attorneys' fees at Lewis Brisbois's regular hourly rate." To the extent that an award included a common fund from which attorneys' fees would be calculated using a multiplier (additional fees awarded to counsel for taking on a difficult case involving novel issues of fact and law), counsel would receive a pro rata share of such an award based on actual hours worked on in the case. The agreement listed current hourly rates for Lewis Brisbois as from $250.00 to $450.00 per hour, and $200.00 per hour for the GCO legal personnel.

In plaintiffs' response to this Court's inquiry, plaintiffs' attorneys clarified that of the $594,539.36 designated as fees for DC 37, approximately $440,000.00 was to reimburse DC 37 for the attorneys' fees it had already paid to Lewis Brisbois for representing plaintiffs. The remaining portion, approximately $154,539.36, was to compensate DC 37 for the hours its in-house counsel spent on this matter. Counsel asserts that Sykes worked a total of 720.75 hours on this litigation from January 23, 2006 through March 11, 2010. This included performing the preliminary work on this case, such as drafting, distributing, and reviewing over 1,000 employee surveys; drafting the complaint and amended complaint; defending depositions; drafting responses to discovery requests; and participating in document review. Sykes has informed the

---

[4] Sykes is the Senior Assistant General Counsel for the GCO and is admitted to practice in the State of New York, Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit.

Court that any legal fees recovered by DC 37 will go into the general union fund. Moreover, he has clarified that despite having separate budgets for each division of DC 37, all of the divisions, including the GCO, are centrally funded.

## DISCUSSION

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). This Court has an obligation when approving an award of attorneys' fees in both a class action and under the FMLA to evaluate the reasonableness of the attorneys' fees requested. In re Agent Orange Product Liab. Litig., 818 F.2d 216, 222 (2d Cir. 1987) ("[F]ed. R. Civ. P. 23(e), which requires court approval of any settlement of a class action suit ... places the court in the role of protector of the rights of the class when such a settlement is reached and attorneys' fees are awarded."); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine, under all the circumstances, what constitutes a 'reasonable' fee, and in appropriate circumstances the court may conclude that, even though a plaintiff has formally prevailed [in an FMLA action], no award of fees to that plaintiff would be reasonable." (internal citation omitted)). "The Court is authorized to fulfill this obligation by governing and supervising the ethical conduct of attorneys as provided in the Code of Professional Responsibility." Kronfeld v. Transworld Airlines, Inc., 129 F.R.D. 598, 611-12 (S.D.N.Y. 1990) (citing cases).

It is clear that plaintiffs are entitled to attorneys' fees in this case. Moreover, this Court finds that the hours Sykes worked on this matter to be reasonable in light of the length, complexity, and nature of this litigation. However, this Court is unable to determine whether the

amount plaintiffs seek for Sykes's services is reasonable without exploring the fee arrangement set forth in the Stipulation and ensuring that any award comports with the ethical rules.

I. **Ethical Rules**[5]

When this Court was presented with the parties Stipulation, it was immediately concerned by the fact that under the Stipulation, the City was to pay attorneys' fees *directly* to DC 37. DC 37 is not a party to this action, nor is it a law firm. Yet, despite this, attorneys' fees were being paid to *both* Lewis Brisbois – a law firm – and DC 37 – a union.

There is no ethical issue with Sykes, as a salaried union attorney, representing plaintiffs. See United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S. Ct. 353 (1967) (holding that a union is not engaged in the unauthorized practice of law by hiring attorneys on a salary basis to provide its members with legal representation). Nor is there any problem with awarding attorneys' fees to "in-house counsel if such fees would be awarded for the same work performed by outside counsel." Video-Cinema Films, Inc. v. Cable News Network, Inc., Nos. 98 Civ. 7128, 98 Civ. 7129, 98 Civ. 7130, 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004) (citing Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541 (1984)).

However, when a salaried staff attorney for a non-legal organization renders legal services to a client other than his employer, ethical issues come into play when determining how much, and to whom, legal fees are to be awarded. Although an attorney is obviously permitted to accept legal fees, he is not permitted to share those fees with a nonlawyer. New York State Rules of Prof'l Conduct Rule 5.4(a) (2009) ("A lawyer or law firm shall not share legal fees with

---

[5] The ethical rules cited in this Order are almost, if not identical, under the New York State Rules of Professional Conduct, the Model Rules of Professional Conduct, and the ABA Model Code of Professional Responsibility.

a nonlawyer...");[6] see ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995) (addressing the issue of sharing legal fees with a for-profit corporate employer); N.Y. Cnty. Lawyers' Ass'n Comm. on Prof'l Ethics, Op. 670 (89-3) (1989) (discussing legal fees charged by in-house lawyers). This prohibition against fee-splitting with nonlawyers is "intended to bar any financial arrangement in which a nonlawyer's profit or loss is directly related to the success of a lawyer's legal business." N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 679 (1996) (discussing fee sharing with nonlawyers, including in the context of a class action).

The rationale behind this rule is that when nonlawyers become involved in the legal process, the "lawyer's independent professional judgment can be impaired by the influence and control of nonlawyers who, by definition, are not subject to the same ethical mandates regarding independence, conflicts of interest, confidentiality, fees and the other important provisions of the profession's code of conduct." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995); see also N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 679 (1996). It is believed that "[f]ee splitting between lawyer and layman ... poses the possibility of control by the lay person, interested in his own profit, rather than the client's fate...." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995) (internal citation omitted). The rule thus developed to stifle "the unauthorized practice of law, and to assure professional control over, and prevent any lay interference with, the representation of clients." N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 679 (1996); see also ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995).

---

[6] See Local Civil Rule 1.5(b); see also Model Rules of Prof'l Conduct R. 5.4(a) (1983); Model Code of Prof'l Responsibility DR 3-102 (1980).

When a non-legal organization or other layman profits from the rendering of legal services, in addition to raising issues of improper fee-splitting between a lawyer and nonlawyer, other ethical rules may be violated, such as the prohibition on the unauthorized practice of law,[7] or unlawful misrepresentations through the labeling as "attorney's fees" an amount that has no correlation to the compensation of the attorney involved.[8] N.Y. Cnty. Lawyers' Ass'n Comm. on Prof'l Ethics, Op. 670 (89-3) (1989); see also N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 618 (1991) (addressing the issue of whether a salaried lawyer can remit fees to a corporate employer). Regardless of the ethical rule at play, the true "evil" appears to arise "only when a lay agency earns a *profit* from the rendition of legal services." N.Y. Cnty. Lawyers' Ass'n Comm. on Prof'l Ethics, Op. 670 (89-3) (1989) (emphasis in original); see also ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995) (noting that "while a corporation should be free to require its lawyers to reimburse its costs of employing in-house counsel when the lawyers do work for others, or to be made whole for the costs it actually incurred in a case when its lawyers are awarded fees by a court, a corporation may not reap profits from the work of its in-house attorneys.").

In New York, the State Bar Association has explicitly condemned "the practice whereby a salaried staff attorney participates in an arrangement in which the lay employer charges a third party for services rendered by the staff attorney [in] an amount that exceeds the employer's own cost for the services of the staff attorney." N.Y. Cnty. Lawyers' Ass'n Comm. on Prof'l Ethics, Op. 670 (89-3) (1989); see also N.Y. City Ass'n of the Bar Comm. on Prof'l and Judicial Ethics,

---

[7] See New York State Rules of Prof'l Conduct Rule 5.5 (2009); see also Model Rules of Prof'l Conduct R. 5.5 (1983); Model Code of Prof'l Responsibility DR 3-101 (1980).

[8] See New York State Rules of Prof'l Conduct Rule 8.4(c) (2009); see also Model Rules of Prof'l Conduct R. 8.4(c) (1983); Model Code of Prof'l Responsibility DR 1-102(A)(4) (1980).

8

Formal Op. 1994-6 (1994) (determining that "it is not improper for a bank to charge borrowers for legal services rendered by in-house counsel, provided that the amount charged does not exceed the actual cost to the bank of employing in-house counsel to provide those services, including the allocable portion of the attorney's annual salary and the bank's reasonable overhead expenses."); N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 618 (1991) (explaining that it is improper for a salaried lawyer to remit payment to its corporate employer that is in excess of the lawyer's salary and allocable overhead).

New York courts are also generally strict in applying the rule against fee-splitting. See, e.g., Ungar v. Matarazzo Blumberg & Associates, P.C., 260 A.D.2d 485, 486, 688 N.Y.S.2d 588, 589 (2d Dep't 1999) (finding a fee-splitting arrangement between lawyers and a nonlawyer despite the parties attempt to label the agreement as providing compensation and bonuses to the nonlawyer); In re Friedman, 196 A.D.2d 280, 609 N.Y.S.2d 578 (1st Dep't 1994) (fee sharing where lawyer agreed to pay a private investigator an hourly rate plus additional compensation contingent on success of litigation); In re Shapiro, 90 A.D.2d 22, 455 N.Y.S.2d 604 (1st Dep't 1982) (paying salary to a nonlawyer employee contingent on total fees earned); Gorman v. Grodensky, 130 Misc. 2d 837, 498 N.Y.S.2d 249 (N.Y. Sup. Ct. 1985) (fee sharing where law firm hired a nonlawyer to engage in debt collection work as office manager for weekly salary plus one-third of the net profits).

## II. Ethical Concerns that arise when the Lay Organization is a Union

The Second Circuit has not addressed the ethical issues that arise when a union seeks to recover fees from the legal work performed by its in-house counsel. However, several other circuits have recognized that the same ethical concerns that arise when a corporation profits from

9

the legal services of its salaried attorneys are also at issue when the lay organization is a union. See, e.g., Harper v. Better Business Servs., Inc., 961 F.2d 1561 (11th Cir. 1992); Goodrich v. Dep't of the Navy, 733 F.2d 1578 (Fed. Cir. 1984), abrogated by Raney v. Federal Bureau of Prisons, 222 F.3d 927 (Fed. Cir. 2000); Nat'l Treasury Emps. Union v. Dep't of the Treasury, 656 F.2d 848 (D.C. Cir. 1981); Anderson v. Dep't of the Treasury, 648 F.2d 1 (D.C. Cir. 1979) (per curiam). In these cases, the courts limited the unions to recouping only their actual costs in providing legal services.

The American Bar Association and New York State Bar Association are of the same opinion as those circuit courts. Both have issued opinions concluding that because of the ethical concerns implicated when a union receives profits from legal services, it should be limited to recovering only its costs. See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995) (finding the ethical considerations are the same regardless of whether the organization is a union or profit-seeking corporation and it would be improper to allow either to recover more than their financial outlay); N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 618 (1991) (noting that regardless of whether a fee is reasonable, it is improper for a salaried lawyer to remit to its employer and/or union, fees it received from a "third-party in excess of the lawyer's salary and allocable overhead").

The concern in awarding unions fees in excess of their costs is that the union, as a lay organization, would be able to "capitalize on the attorney's services, reap a profit therefrom, and put the monies thus made to any use it chooses." Nat'l Treasury Emps. Union, 656 F.2d at 853. These additional fees would relieve the union of the burden of having to finance its litigation activities through its general funds or enable it to fund other activities, effectively resulting in fee-splitting. Raney, 222 F.3d at 935-36 (discussing its decisions in Devine and Goodrich).

Nonetheless, several courts have found that where the legal fees awarded are to be deposited into a separate fund controlled exclusively by lawyers and used solely for legal work, the ethical concerns associated with fee-splitting are no longer present, and salaried union attorneys can be awarded fees at market rates. See, e.g., Raney, 222 F.3d 927; Kean v. Stone, 966 F.2d 119 (3d Cir. 1992); Am. Fed'n of Gov't Emps. v. Federal Labor Relations Auth., 944 F.2d 922 (D.C. Cir. 1991); Curran v. Dep't of Treasury, 805 F.2d 1406 (9th Cir. 1986); Ward v. Brown, 899 F. Supp. 123 (W.D.N.Y. 1995); Siler v. Mgmt. Adjustment Bureau, No. 91-cv-65E, 1992 WL 170699, *1 (W.D.N.Y. July 6, 1992). The crucial element in all of these cases was that the fees were not going into the general union treasury, but into a separate legal fund – one controlled by lawyers and funding only legal activity.

These courts reasoned that the door is opened "to fee-splitting, unauthorized law practice and organizational profiteering on the professional services of attorneys" when market rates are awarded to an organization that furnishes legal services and *other* activities, with legal fees being used to fund these *other* activities. Am. Fed'n of Gov't Emps, 944 F.2d at 934. However, when those fees are no longer placed into the general union treasury and are used strictly to fund legal activities, those ethical concerns are no longer present. See, e.g., Raney, 222 F.3d at 938 ("[W]hen a legal fund is separated from other union funds and is controlled exclusively by attorneys for the sole benefit of employee litigation, such segregation eliminates ethical barriers to market rate calculation for attorney fee awards."); Am. Fed'n of Gov't Emps., 944 F.2d at 935 (noting that this type of separate legal fund "is of the very sort [of arrangement] we have approved as a bulwark against unethical practice"); Curran, 805 F.2d at 1408 (holding that "a separate operating account for legal services provides sufficient protection against the unauthorized practice of law by a lay organization"); Siler, 1992 WL 170699 at *2 (finding that

11

because the union's legal services fund was financially independent from the union, there were no concerns that attorney's fees would go "directly or indirectly into union coffers").

In essence, when a union creates a separate legal fund, the fund is viewed the same way as a non-profit legal services organization. See Siler, 1992 WL 170699 at *2 (noting that by giving a legal fund a level of financial independence apart from the union, the fee request is taken outside the purview of cases such as Goodrich and National Treasury Employees Union, and into that of Blum); see also Am. Fed'n of Gov't Emps., 944 F.2d at 935; Raney, 222 F.3d at 933. When legal services are performed by salaried attorneys working for a non-profit legal organization, such as a legal aid office, ethical concerns no longer bar recovery at market rates. See Nat'l Treasury Emps. Union, 656 F.2d at 853 ("The Code of Professional Responsibility permits a lawyer to divide fees with or distribute them to other members of his 'law firm or law office,' and we see no reason why this authorization should not extend to public as well as private legal practitioners. The same principle leaves a salaried attorney at liberty to surrender his fees to a public interest organization dedicated entirely to litigative activities."); see also ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 93-374 (1993) (finding it is not ethically improper for a lawyer who undertakes a pro bono litigation representation on behalf of a non-profit organization to share court-awarded fees with the non-profit). Thus, these organizations have long been awarded market rate fees to promote the enforcement of the underlying statutes authorizing the fees. See Blum, 465 U.S. at 895 (holding non-profit legal service organizations are entitled to receive reasonable attorney's fees at prevailing market rates); Nat'l Treasury Emps. Union, 656 F.2d at 853-54.

## III. Ethical Concerns Bar Recovery of Attorneys' Fees at Market Rate in this Case

Plaintiffs contend that DC 37 is entitled to recover attorneys' fees at market rate for the work performed by Sykes as in-house counsel in this case.[9] In support of their position, plaintiffs cite to cases, such as the ones referenced above, in which a union had created a separate legal fund for depositing any fees.[10] However, plaintiffs have failed to establish how their situation, in which attorneys' fees would be deposited into DC 37's general union coffers, permits the union to recover more than its actual costs.

The fee arrangement provided in the Stipulation clearly presents the issue of improper fee-splitting between a lawyer and a nonlawyer. Under the Stipulation, any award of attorney's fees would be paid directly to DC 37. This money would then be deposited into the general fund for DC 37, and accessible by all of its divisions – not just the GCO. DC 37 would be profiting off of the services performed by its in-house attorney and would have complete discretion to use that money to fund whatever activities it wishes. This is in direct violation of this profession's codes of ethical conduct and prohibits the union from recovering any more than its actual costs in providing legal services to plaintiffs. See Harper, 961 F.2d at 1564 ("There is ample authority supporting the proposition that attorney's fees can be limited to the cost of providing the legal services if there is a risk of inappropriate economic benefit to a union and improper sharing of attorney's fees with nonlawyers.").

---

[9] Although the parties have agreed to the amount of attorneys' fees to be awarded in this case, plaintiffs maintain that had they made an application for attorneys' fees to the Court, they would have sought fees for Sykes at a market rate of $300.00 per hour. This is $100.00 more per hour than the hourly rate listed for GCO legal personnel in the retainer agreement between the GCO, Lewis Brisbois, and plaintiffs. Plaintiffs' counsel has not indicated why fees at this higher rate are justified.

[10] Plaintiffs also cite to Saunders v. City of New York, No. 07 Civ. 830 (SAS), 2009 WL 4729948, *1 (S.D.N.Y. Dec. 9, 2009). In that case, the same attorneys – Lewis Brisbois and the GCO – represented plaintiffs in a Fair Labor Standards Act action and sought an award of attorneys' fees. However, the decision in that case awarded fees at market rate without discussing these ethical concerns.

Furthermore, plaintiffs' contention that all fee-splitting objections can be avoided because an award of attorney's fees under the FMLA belongs to the plaintiff, and not the attorney, does not solve the problem. Plaintiffs cite Central States Pension Fund v. Central Cartage Company, 76 F.3d 114 (7th Cir. 1996), for the proposition that because the litigant owns the award, all fee-splitting objections are overcome. However, the facts in Central States are distinguishable.

In Central States, a pension fund was seeking an award of attorney's fees under ERISA on behalf of its in-house counsel who represented it in that action. The Seventh Circuit noted that because the fee-shifting statute directed the "award to the litigant, rather than the lawyer," and the "litigant owns the money representing the market value of the legal fees, and [is free to] pocket the cash without remitting a cent to the lawyer – who may have agreed to work for less, or for free – it is hard to see how there can be a fee-splitting objection." Id. at 116. The distinguishing factor in Central States is that the Pension Fund was the plaintiff, whereas here, DC 37 is not a party to this action and does not in any way "own" the fee award. DC 37 is merely the union that employed one of the attorneys that represented plaintiffs in this class action. Moreover, it is not clear whether the fees that were awarded in Central States were directed into a separate legal fund. See Harris v. Dorothy L. Sims Registry, No. 00 C 3028, 2002 WL 99733, *2 (N.D. Ill. Jan. 25, 2002) (citing Central States for the proposition that a "legal services fund within a union ... may recover fees at a market rate").

Rather, I find this case to be factually similar to National Treasury Employees Union. In that case, the plaintiff brought a suit under the Privacy Act of 1974 and was represented by attorneys who were salaried employees of the National Treasury Employees Union ("NTEU"). Plaintiff moved for an award of attorney's fees, and as is the case here, sought fees at market rate

to be paid *directly* to the union. Plaintiff's counsel informed the court that NTEU would be depositing the entire fee recovered into the union's general treasury. In determining what fees to award, the Court of Appeals for the District of Columbia Circuit noted, "we must treat the matter for what it really is[,] a quest by the union to recover attorney's fees aggregating more than the cost to it of supplying the legal services [plaintiff] utilized in [this action]." 656 F.2d at 851. The Court of Appeals cited the same ethical concerns discussed above, and held that the ethical rules were an obstacle to the union being awarded attorney's fees in excess of its costs. See also ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-392 (1995) (discussing National Treasury Employees Union and noting that the ethical considerations are the same for a profit-seeking corporation and a union and that "for the same reasons it would be improper to allow [a] corporation to recover more than its financial outlay," it is improper to permit a union to do so).

Accordingly, this Court finds that, absent a separate legal fund for depositing attorneys' fees, the prohibition on fee-splitting bars DC 37 from recovering fees at market rate for the services provided by its in-house counsel.

### IV. Fees to be Awarded to Plaintiffs

As the parties have only submitted a Stipulation with the total sums to be awarded, this Court has no basis for determining the actual legal costs DC 37 incurred in this action. Plaintiffs have not provided the Court with the exact amount they are seeking as reimbursement for fees paid to Lewis Brisbois; rather, they allege "approximately" $440,000.00. Moreover, this Court does not have an actual breakdown of DC 37's costs in employing Sykes to compare the actual hourly rate being sought for his services under the Stipulation. Based on the number of hours

Sykes worked, and the approximate fees DC 37 is seeking, it appears that he would be recovering fees at an hourly rate of approximately $215.00 per hour.

## CONCLUSION

Plaintiffs' counsel is directed to submit to the Court within 14 days of the date of entry of this Order the precise amount it is seeking as reimbursement for fees paid by DC 37 to Lewis Brisbois, together with documentary support for those payments, as well as the actual costs that DC 37 incurred for Sykes's work on this matter. Once this Court receives these amounts, it will enter an Order providing for the amount to be awarded plaintiffs.

**SO ORDERED.**

/s/(BMC)
------------------------------
U.S.D.J.

Dated: Brooklyn, New York
     July 6, 2010